## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **BYRON C. THOMAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 24-CV-0102-SEH-JFJ** |
| | ) | |
| **TULSA COUNTY SHERIFF, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>ORDER</u>

Plaintiff Byron C. Thomas initiated this action on March 6, 2024, by filing a Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 (Dkt. 1).  Thomas did not pay the fees necessary to commence this action and did not request leave to proceed without prepayment of those fees. Regardless, having screened the Complaint as required by 28 U.S.C. § 1915A, the Court finds and concludes that the Complaint shall be dismissed for failure to state any claims on which relief may be granted.

### I.

Thomas is a self-represented litigant detained at the David L. Moss Criminal Justice Center in Tulsa, Oklahoma ("the Tulsa County Jail").  Dkt. 1, at 1.  He brings this action under 42 U.S.C. § 1983 against six defendants:  (1) Tulsa County Sheriff; (2) United States Marshals; (3) U.S. Deputy Marshal Joey Poffel; (4) Risk Management; (5) Major Bryant, an employee of the Tulsa County Sheriff's Office; and (6) Rose, an employee of Risk Management.  *Id.* at 1-2.

Thomas generally claims he "was denied [his] rights under the constitution to 'access the courts' and 'due process of law' when the Marshals sent over a memo to the county jail to cease all communication which was approved by Major Bryant, the acting major at that time."  *Id.* at 3.

Thomas identifies three specific claims.  First, he claims that Deputy Marshal Joey Poffel and Major Bryant violated his First, Fifth, and Fourteenth Amendment rights to access the courts.  *Id.* at 3.  In support of this claim, Thomas alleges that on November 9, 2023, he was speaking to his niece on the phone, and he asked her to obtain the address of a federal judge so that he could write a letter to the judge regarding "illegal & unethical acts by Agents, Officers, Prosecutors and the Judges of [Tulsa] County."  *Id.* at 4.  About fifteen minutes after he ended this call, Thomas tried to call his sister, but he discovered that his phone "was cut off."  *Id.* at 5.  Deputy Cody Smith told Thomas that the Marshals sent a memo directing jail officials to restrict Thomas's access to the phone, incoming and outgoing mail, and the jail's kiosk system for one week.  *Id.*  Thomas later spoke with Andrade, a disciplinary hearing officer, who told him that "the memo was sent over per the Judge's orders by Deputy Marshal Joey Poffel and requested Major Bryant and administration over the facility to cut off all [of Thomas's] communication."  *Id.* at 6.  According to Thomas, these restrictions were prompted by his request for the federal judge's address and constitute "a blatant show of trying to hinder or stop [him] from being able to write [his] judge" a letter explaining how his "constitutional rights are being violated."  *Id.* at 5.

Second, Thomas claims Risk Management and Rose violated his Fifth and Fourteenth Amendment rights to due process.  *Id.* at 4.  Thomas alleges he filed a grievance on November 14, 2023, and received no response.  *Id.* at 5.  When he asked "supervisors" and the "Risk Management Dept." about the grievance, he was told that no one received it.  *Id.*  Rose "took pictures of the grievance" on December 19, 2023.  *Id.*  Rose told Thomas she never received the grievance from Thomas.  *Id.*  Thomas told Rose he gave the grievance to Deputy Farthing who, in turn, gave it to Corporal Daniels.  *Id.* at 5-6.  Thomas later spoke with Andrade, a disciplinary hearing officer, about the grievance.  *Id.* at 6.  Andrade told him that Administrator Holloway "never received the

grievance and that someone at Risk Management has it and is being dishonest with [Thomas]." *Id.* Thomas tried to speak with Rose about the grievance on February 7, 2024. *Id.* Rose denied receiving the grievance and walked away from Thomas because she did not want to discuss the grievance. *Id.* According to Thomas, these facts demonstrate "that they are engaging in criminal activity and [have] lost [his] grievance in an attempt to hinder or stop [his] process in filing a complaint for these issues." *Id.*

Third, Thomas claims "mail room personnel" violated federal law by tampering with his mail. *Id.* at 7. In support of this claim, Thomas alleges that, on December 30, 2023, he sent three envelopes to his sister: two with a letter to the judge and one with a copy of the grievance. *Id.* He further alleges that his sister received the two envelopes with letters to the judge, with tape showing that both had been opened by the facility before mailing, and that his sister did not receive the third envelope with the grievance. *Id.*

To remedy these alleged civil rights violations, Thomas seeks unspecified punitive and compensatory damages. *Id.*

## II.

District courts must screen civil complaints filed by prisoners seeking redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must identify any cognizable claim and dismiss any claim which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). In determining whether dismissal is appropriate, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in the plaintiff's favor but may disregard legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009). When, as in this case, a plaintiff

appears without counsel, a court also must liberally construe his pleading.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The rule of liberal construction provides "that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  *Id.*  But a court may not "assume the role of advocate for the pro se litigant."  *Id.* And the rule of liberal construction "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."  *Id.*  To state a plausible claim for relief under § 1983, a plaintiff must allege facts showing that (1) a person (2) acting under color of state law (3) deprived, or caused another person to deprive, (4) the plaintiff of a right protected by federal law.  *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002).

## III.

Even applying the rule of liberal construction, the Court finds that the Complaint shall be dismissed for failure to state any claims on which relief may be granted and that it would be futile to grant Thomas leave to file an amended complaint.  Thomas first claims that temporary restrictions on his phone, mail, and kiosk privileges, imposed by Deputy Marshal Poffel and Major Bryant, resulted in a denial of his constitutional right of access to the courts.  To state a plausible denial of access claim, a plaintiff must allege facts showing "actual injury from interference with his access to the courts—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement."  *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010).  Thomas alleges no actual injury.  At most, the facts alleged show that Thomas wanted to write one or more letters to a federal judge to lodge general complaints about perceived constitutional defects in the Tulsa County judicial system.

Even assuming the alleged temporary restrictions on his communication delayed his access to the courts, Thomas does not state a plausible claim that this alleged interference deprived him "of the opportunity to present a nonfrivolous legal claim." *Gee*, 627 F.3d at 1191.

Next, Thomas claims he was denied due process because he filed a grievance that Risk Management and Rose either did not receive or intentionally misplaced. Critically, though, the Constitution does not guarantee access to prison or jail grievance procedures. *See, e.g.*, *Green v. Corr. Corp. of Am.*, 401 F. App'x 371, 375 n.4 (10th Cir. 2010) (noting that prisoner had no constitutional right to use the prison grievance procedure); *Sawyer v. Green*, 316 F. App'x 715, 717 n.3 (10th Cir. 2008) (explaining that jail and sheriff's office authorities' lack of response to prisoner's grievances did not violate the constitution because procedurally, nothing more is required than the plaintiff's ability to raise his constitutional claims in the courts); *Walters v. Corr. Corp. of Am.*, 119 F. App'x 190, 191 (10th Cir. 2004) (concluding that prisoner failed to state a claim for § 1983 relief where he alleged a denial of access to state administrative grievance procedures and reasoning that "the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance") (quoting *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991))).[1]

Finally, Thomas claims unspecified "mail room personnel" committed a federal crime by "tampering" with his mail. Though not clear, this claim appears to be based on allegations (1) that mail room personnel opened two letters Thomas mailed to his sister and then retaped the envelopes before those letters were mailed to (and received by) his sister and (2) that his sister did not receive

---

[1] The Court cites all unpublished opinions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

the copy of the grievance that Thomas mailed in a third letter.  The Court generously construes this claim as attempting to assert a violation of his First Amendment right to free speech or of his constitutional right of access to the courts.  But Thomas does not state any plausible constitutional claims on the facts alleged.  Restrictions on outgoing inmate mail are justified if reasonably related to an important government interest.  *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989).  And "[w]here good cause is shown . . . a prisoner's outgoing mail can be read without violating the prisoner's First Amendment rights.  *Gandy v. Ortiz*, 122 F. App'x 421, 422 (10th Cir. 2005).  Thomas boldly alleges that mail room personnel committed a federal crime, but he does not allege they violated the jail's own regulations, if any, regarding opening and inspecting outgoing mail.  Accepting Thomas's allegations as true, jail officials restricted his mail privileges in November 2023 after a judge ordered the restriction, and mail personnel opened two pieces of his outgoing mail in December 2023 before sending that mail which Thomas describes as letters to a judge.  These facts do not suggest any plausible constitutional violations.  *See Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993) (concluding that prisoner's allegation that his incoming legal mail was opened and read but not censored does not rise to level of constitutional violation); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) ("Defendants admitted to opening one piece of [the plaintiff's] constitutionally protected legal mail by accident.  Such an isolated incident, without any evidence of improper motive or resulting interference with [the plaintiff's] right to counsel or to access to the courts, does not give rise to a constitutional violation.").  As for the third letter that Thomas's sister allegedly never received, the facts alleged suggest possible negligence in the processing of Thomas's mail, not a constitutional deprivation.  *See Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005) (noting that "when legal mail is inadvertently lost or misdirected, no constitutional violation occurs").

**IV.**

Based on the foregoing, the Court concludes that the Complaint shall be dismissed on preliminary screening, under 28 U.S.C. § 1915A, for failure to state a claim on which relief may be granted.  The Court further concludes that it would be futile to permit Thomas to file an amended complaint.

**IT IS THEREFORE ORDERED** that the Complaint (Dkt. 1) is **dismissed without prejudice** and without leave to amend, under 28 U.S.C. § 1915A, because it fails to state any claims on which relief may be granted.  This is a final order terminating this action and a separate judgment of dismissal shall be entered herewith.

**DATED** this 15th day of April, 2024.

Sara E. Hill
UNITED STATES DISTRICT JUDGE